MUTUAL LIFE INS. CO. *v.* SUITER *et al.*

*(Supreme Court, General Term, Fourth Department.* April, 1891.)

EVIDENCE—HANDWRITING—PROOF BY COMPARISON.

On an issue as to whether a signature purporting to be that of defendant was genuine or forged the court admitted, for the purpose of comparison, as provided by Laws N. Y. 1880, c. 36, as amended by Laws 1888, c. 555, defendant's signature to the answer, but rejected defendant's signature made two years before, and also a paper written and signed by defendant about 12 years before. *Held,* that it was error to exclude such writings offered for the purpose of comparison with the disputed signature.

Appeal from special term, Onondaga county.

Action by the Mutual Life Insurance Company of New York against Ann Suiter and Mary A. Suiter and Ann Suiter, her daughters, impleaded with Mathias Suiter, Crescentia Suiter, George Suiter, and others, to foreclose a mortgage executed by Mathias Suiter and wife and George Suiter on a farm of about 85 acres of land, situated in the town of Manlius, Onondaga county, N. Y. The premises in question formerly belonged to Mathias Suiter, Sr., who before the year 1876 died intestate and the owner of said premises. He left him surviving his widow, Ann Suiter; two sons, Mathias Suiter and George Suiter; and three daughters, Ann Suiter, Mary A. Suiter, and Barbara Schepp. Shortly after the death of Mathias Suiter, Sr., and on the 12th day of April, 1876, his widow, Ann Suiter, and his daughters, Mary A. Suiter, Ann Suiter, and Barbara Schepp, for a valuable consideration conveyed and quitclaimed the farm and premises described in the complaint, being the premises of which said Mathias Suiter, Sr., died seised, to Mathias Suiter and George Suiter. This deed contained the following provision: "This conveyance is made subject to the support in every respect, maintenance, care, medical attendance, and clothing of Ann Suiter, the widow of Mathias Suiter, deceased, and Ann Suiter, the daughter, suitable and proper to their station in life, to be furnished by the parties of the second part, their heirs, executors, administrators, or assigns, to them during their natural lives and the life of the junior of them, which support in every respect, maintenance, care, and medical attendance and clothing of the said Ann Suiter, the mother, and Ann Suiter, the daughter, is hereby made a charge and lien upon the premises above described, during their natural lives and the life of the survivor of them; and this conveyance is also hereby made subject to the payment by the parties of the second part, their heirs, executors, administrators, or assigns, upon the decease of Ann Suiter, the mother, of the sum of five hundred dollars without interest, to Mrs. Barbara Schepp or her legal heirs, and of the sum of five hundred dollars to Mary Suiter or her legal heirs, which payments are hereby made a charge and lien upon the premises above described as a part of the purchase price thereof, which covenants, agreements, charges, and conditions the parties of the second part hereby assume, covenant, and promise to fulfill and perform." The defendants Mathias Suiter and George Suiter, with their mother and sisters, except Barbara Schepp, who has since died, have occupied the farm in question since such deed was given, and up to the present time. On the 27th day of June, 1887, Mathias Suiter and George Suiter gave their bond and executed the mortgage to the plaintiff described in the complaint. The mortgage was given to secure the sum of $3,500. It appears to have been executed without the consent or knowledge of the appellants, and none of them joined in it. When this mortgage was given the plaintiff was furnished an abstract of title, which showed the title to be in the defendants George and Mathias Suiter, and did not disclose the clause in the deed reserving an estate or interest therein to the appellants. After this was discovered by the plaintiff a deed was made by Mathias Suiter and his wife, which purported to convey their interest in the premises to the appellants, and purports to have been signed by them, which deed contained the

following covenant: "And the parties of the second part hereby assume and agree to pay said mortgage as a part of the consideration of this conveyance." The appellants alleged, and gave evidence upon the trial which tended to show, that their signatures to such deed were forgeries, and that the deed was never accepted by them. On the trial they testified that the deed was neither signed nor acknowledged by them, and three experts in handwriting were called, who compared the signatures to such deed with one of their genuine signatures, and testified that in their opinion they were not made by the same persons. In opposition, the plaintiff called one expert witness, who testified that in his opinion, based upon a comparison of the signatures upon this deed with the one admitted signature of these parties, they were signed by the same person. The appellants also introduced the evidence of three expert witnesses, who compared the notary's purported signature to the acknowledgment with his genuine signature, and testified that in their opinion the signature to the acknowledgment was not in the same handwriting as the genuine signature. The appellants also testified that they never acknowledged such deed. The plaintiff called three expert witnesses, who testified that in their opinion the notary's signature to the deed was in the same handwriting as his genuine signature, and proved by another witness that Ann Suiter, widow, said that she signed a paper before the notary. The court found with the plaintiff that such deed was delivered to the defendants Ann Suiter and her daughters Mary Suiter and Ann Suiter; that the same was executed under their hands and seals, and acknowledged by them; and that such conveyance was accepted with the intention of merging the liens of the appellants upon the premises described in the complaint with the title therein of Mathias Suiter and wife, conveyed to them as aforesaid, and of making the same subject to the plaintiff's mortgage. The court held as conclusions of law: "(1) That when said conveyance was made by Mathias Suiter and wife to said Ann Suiter, widow, Ann Suiter and Mary Suiter, daughters, of Mathias Suiter, Sr., deceased, of the premises described in the complaint, all the said liens and interest of the said grantees upon and in the premises described in the complaint became merged with the title so conveyed to them and subject to the lien of the mortgage set forth in the complaint. (2) That the plaintiff is entitled to the usual decree of foreclosure and sale of all the right, title, and interest of the defendants in this action in and to the premises described in the complaint to this action. (3) That the right, title, and interest of the defendants Mathias Suiter, Crescentia Suiter, and George Suiter be first sold to satisfy the sums adjudged to be paid to the plaintiff and his attorneys by the decree to be entered herein, and the costs and expenses of such sale, and, if the sums so received prove insufficient to pay and satisfy the same, then that the right, title, and interest of the defendants Ann Suiter, widow, and Ann Suiter and Mary Suiter, children, of said Mathias Suiter, deceased, in and to the premises described in the complaint be sold for that purpose. (4) That in case the sums realized from the sale of the interests of all the defendants in said premises shall prove insufficient to pay and satisfy the sums adjudged to be paid by the decree herein and costs and expenses of sale, then that said plaintiff have judgment for such deficiency against the defendants, Mathias Suiter, George Suiter, Ann Suiter, widow, and Ann Suiter and Mary Suiter, children, of Mathias Suiter, deceased." The appellants excepted to these conclusions of law by the court. They also requested the court to find: "*Seventh.* That said defendants Ann Suiter, widow, and Ann Suiter and Mary A. Suiter, daughters, on or about the 1st day of November, 1888, or on any other day, never accepted from the defendants Mathias Suiter and Crescentia a deed dated on or about that day, or any other day, by the terms of which the said defendants Ann Suiter, widow, and Ann Suiter and Mary A. Suiter, her daughters, covenanted and agreed to assume said mortgage of $3,500, or any other mortgage, as a part of the consideration of the said con-

veyance, or at the time of said alleged conveyance knew that such a conveyance had been made, or knew that a mortgage of $3,500 or for any other amount had been executed by said Mathias Suiter and Crescentia Suiter and George Suiter to the plaintiff upon the premises in question. *Eighth.* If the said Mathias Suiter and Crescentia Suiter on or about the said 1st day of November, 1888, executed to the said defendants Ann Suiter, widow, Ann Suiter and Mary A. Suiter, daughters, said. defendants Ann Suiter, widow, Ann Suiter and Mary A. Suiter, daughters, never knew of the existence of said deed until long after the same had been executed and put on record, and never knew that said deed contained the condition to assume and pay said $3,500 mortgage or any other mortgage. *Ninth.* That the first knowledge the defendants Ann Suiter, widow, and Ann Suiter and Mary A. Suiter, daughters, had of the execution and delivery of said $3,500 mortgage and the execution and recording of said deed alleged to have been executed by said Mathias Suiter and Crescentia Suiter to them of the premises in question was obtained on or about January, 1889, after the execution and delivery of said mortgage and the executing and recording of said deed; and they have never assumed or agreed to pay the said $3,500 mortgage." The court refused to find as requested, to which refusal the defendants duly excepted. The court, at appellants' request, also found as follows: "*Fourth.* That the defendants Ann Suiter, widow, and Ann Suiter and Mary A. Suiter, daughters, have made no conveyance or transfer of their interests in said premises as reserved to them by said deed dated April 12, 1876, by deed, mortgage, or otherwise. *Fifth.* That at the time of the execution and delivery of said bond and mortgage by the defendants George Suiter and Mathias Suiter and Crescentia Suiter to the Mutual Life Insurance Company the said defendants, Ann Suiter, widow, and Ann Suiter and Mary A. Suiter, daughters, were the owners of and entitled to the interest and rights in said property reserved to them by said deed of April 12, 1876. *Sixth.* That the said defendants Ann Suiter, widow, and Ann Suiter and Mary A. Suiter, daughters, are still the owners of the rights and interests in said property reserved to them by said deed dated on or about April 12, 1876." There was a judgment for plaintiff, and defendants appeal.

Argued before HARDIN, P. J., and MARTIN and MERWIN, JJ.

*Ceylon H. Lewis*, for appellants. *William G. Tracy*, for respondent.

MARTIN, J. It seems to be assumed by all the parties that the rights of the appellants in the premises in question were paramount to any which the plaintiff had or could acquire under or by virtue of its mortgage, unless the appellants have in some way foreclosed themselves from asserting the rights reserved and acquired by them under the provisions of their deed to George and Mathias Suiter. It is contended by the respondent, and was in effect held by the trial court, that the appellants, by acquiring a one-half interest in the premises by deed from Mathias Suiter and wife, which contained a clause by which they agreed to assume and pay such mortgage as a part of the consideration for such transfer, effected a release of their liens on the premises, or a merger of them in the title to the one-half interest thus acquired. We do not think that under the evidence in this case that conclusion was justified. The finding of the court that the conveyance to the appellants was accepted by them with the intention of merging their interest in or liens upon the premises with the title conveyed to them is not sustained by the evidence. The principal issue of fact in this case was whether the deed from Mathias Suiter and wife to the appellants was signed and acknowledged by them, and whether they accepted it, or had any knowledge of its provisions. While the trial court found against the appellants upon this issue, the evidence strongly tended to show that such was not the case. The evidence to sustain the finding of the court was very slight, while a preponderance of the evidence contained in the appeal-book leads to the opposite conclusion. It may be, how

ever, that it was barely sufficient to sustain this finding, and that the judgment ought not to be reversed on the ground that it is against the weight of evidence, as the trial court had the benefit of seeing the witnesses and hearing their testimony, and could perhaps better determine the credit to be given their evidence.   But when we consider the importance of the issue as to the genuineness of the appellants' signatures to this deed, and the slight evidence upon which the deed was held to have been signed and accepted by them, it becomes us to carefully examine the rulings rejecting further evidence bearing upon the question of the genuineness of their signatures, as any error in the rejection of such evidence can by no means be regarded as harmless.   The only signature of Mary A. Suiter and the only specimen of her handwriting the appellants were permitted to introduce in evidence were the signatures to the answers in this action.   They offered in evidence her signature where she had about two years before written her name and place of residence in a book belonging to her or to her family, and also a song which she had written or copied about 12 years before, and to which she had signed her name.   The body of the latter, as well as the signature, was written by her.   These specimens of her handwriting were offered in evidence for the purpose of comparison.   That they were written by her and contained her genuine signature was not disputed or denied.   When offered in evidence they were objected to on the sole grounds that they were incompetent, immaterial, and improper.   The objections were sustained, and the defendant excepted.   The court did not reject this evidence because the genuineness of the handwriting of the papers offered was not proved to its satisfaction, nor upon the ground that the one specimen admitted was sufficient, but upon the ground that it did not think the evidence either admissible or safe.   The purpose of the statute of 1880, as amended by the Laws of 1888, (Laws 1880, c. 36, and Laws 1888, c. 555,)[1] was to change the rule of evidence as it previously existed, and to permit a comparison of the disputed writing with the genuine handwriting of the person claimed to have made or executed the instrument or writing in question.   Whether this statute was wise or unwise was not for the court to determine.   This law was passed by the legislature, and should be fairly administered by the courts.   Parties to an action are entitled to avail themselves of the benefit of its provisions, and to a fair opportunity to present for comparison the genuine handwriting of the person claimed to have made or executed the disputed writing.   Such was the purpose and intent of the statute.   If we assume that the character, number, and sufficiency of identification of the specimens offered for the purpose of comparison is in the discretion of the court, still the discretion to be exercised is a reasonable one, and should be so exercised as to carry into effect the spirit and purpose of the law.   It was improper to reject this evidence as unsafe or inadmissible, and the rulings of the court in excluding it are subject to review by this court.   We think the specimens of the writing and signature of Mary A. Suiter which were offered should have been received in evidence for the purpose for which they were offered, as the opportunity for comparison would have been greatly improved, and the evidence of the expert witnesses called would have been entitled to much greater weight than when, as in this case,

---

[1]Laws N. Y. 1880, c. 36, as amended by Laws 1888, c. 555, is as follows: "Section 1. Comparison of a disputed writing with any writing proved to the satisfaction of the court to be genuine shall be permitted to be made by witnesses at all trials and proceedings, and such writing, and the evidence of witnesses respecting the same, may be submitted to the court and jury as evidence of the genuineness or otherwise of the writing in dispute.   Sec. 2.  Comparison of a disputed writing with any writing proved to the satisfaction of the court to be the genuine handwriting of any person claimed on the trial to have made or executed the disputed instrument or writing shall be permitted, and submitted to the court and jury in like manner; but nothing within contained shall affect or apply to any action or proceeding heretofore commenced or now pending."

the comparison was confined to a single signature, made after the instrument or writing in question. Our attention is called to other exceptions in the case, but it is unnecessary to especially consider them, as we think the judgment should be reversed for the reasons already stated. Judgment reversed, and a new trial ordered, with costs to abide the event. All concur.